UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
MAEVE HERMIDA and             )
JEFFLEE HERMIDA               )
                              )
              Plaintiffs,     )
                              )
      v.                      )  CIVIL ACTION
                              )  NO. 10-12083-WGY
ARCHSTONE, ARCHSTONE AVENIR   )
GP LLC, ARCHSTONE AVENIR LP,  )
ASN PARK ESSEX LLC, ASN QUINCY)
LLC, ANS QUARRY HILLS LLC,    )
ASN BEAR HILL LLC, ASN NORTH  )
POINT I LLC, ASN NORTH POINT  )
II LLC, ASN CAMBRIDGE PARK LLC,)
ARCHSTONE CRONIN'S LANDING,   )
ASN WATERTOWN LLC, ARCHSTONE  )
COMMUNITIES LLC, ARCHSTONE    )
KENDALL SQUARE, and           )
ARCHSTONE READING LLC         )
                              )
              Defendants.     )
_____)
```

MEMORANDUM AND ORDER

YOUNG, D.J.                              November 29, 2011


I.   **INTRODUCTION**

     This is a case of first impression.  The issue is one of

statutory construction of a Massachusetts statute, a matter of

law.  Maeve and Jefflee Hermida (collectively, the "Hermidas")

bring this suit for declaratory judgment against their former

landlord, ASN Reading LLC d/b/a Archstone Reading LLC ("Archstone

Reading") and fourteen other affiliated entities.  The Hermidas

have sued on behalf of themselves and a putative class.  Here,
the Hermidas claim that they were illegally charged with an
"amenity use fee" in connection with the lease of an apartment
owned by Archstone Reading, in violation of the Massachusetts
Security Deposit Statute,  Massachusetts General Laws, chapter
186, section 15B(1)(b) ("Security Deposit Statute" or "section
15B(1)(b)").  This Court presently considers Archstone Reading's
motion for summary judgment.

### A.   Procedural Posture

On October 28, 2010, the Hermidas filed a putative class
action in the Massachusetts Housing Court, Boston Division,
against Archstone Reading and various other entities seeking
declaratory judgment.  Class Action Compl. ¶ 1 ("Compl."), Aff.
Diane R. Rubin Supp. Def. Archstone's Notice Removal, ECF No. 1-
1.  On December 2, 2010, Archstone removed this action to federal
court under the Class Action Fairness Act of 2005 and the
Hermidas did not seek remand.  Notice of Removal, ECF No. 1.  On
December 9, 2010, all defendants, except Archstone Reading, filed
answers to the Complaint.  ECF Nos. 5-18.  During the period
between March 31, 2001 and April 11, 2011, all defendants, except
Archstone Reading, moved for summary judgment.  ECF Nos. 41, 46,
51, 56, 61, 67, 73, 79, 85, 91, 97, 103, 110, 116.  On May 9,
2011, those motions were heard and taken under advisement.  Mot.
Hr'g May 9, 2011.

Archstone was served with the Hermidas' Complaint on April 19, 2011 and timely filed its answer on June 6, 2011. Summons Civil Action, ECF No. 123; Answer Archstone Reading, ECF No. 145. On May 9, 2011, the Hermidas moved for class certification. Mot. Class Certification, ECF No. 135. Subsequently, on May 13, 2011, Archstone Reading moved to dismiss the Hermidas' claims, which this Court denied by electronic order on May 23, 2011. Def. Archstone Reading Mot. Dismiss, ECF No. 139.

On June 22, 2011, this Court held a motion hearing on the Hermidas' Motion for Class Certification. This Court deferred ruling on the motion, and instead collapsed the motion with the trial of an exemplar case during the hearing on the Hermidas' Motion for Class Certification. Tr. Oral Hr'g 20:7-11, June 22, 2011, ECF No. 149. Defendants' written objections to the exemplar trial, filed July 8, 2011, were denied by electronic order on July 12, 2011. Defs.' Objection Exemplar Trial, ECF No. 152. On July 22, 2001, the Hermidas and Archstone Reading jointly filed a Stipulation as to All Uncontested Facts. ECF No. 157.

After a motion's hearing held on September 15, 2011, this Court granted in part and denied in part the Hermidas' Motion to Certify a Class, viz., the motion was allowed as to all persons similarly situated in Archstone Reading who have paid amenity fees and demand return thereof; in all other respects the motion

3

was denied.  The Court took under advisement Archstone Reading's
Motion for Summary Judgment, ECF No. 153, and the Hermidas'
Motion for Summary Judgment, ECF No. 159.  Archstone Reading
filed its Motion for Summary Judgment on July 20, 2011, which is
presently before this Court.  ECF No. 153.

### B.  Undisputed Facts

On May 14, 2007, the Hermidas entered into an initial twelve
month lease agreement with Archstone Reading for apartment unit
#302, a property then owned by Archstone Reading and located at 4
Archstone Circle, Reading, Massachusetts 01867.  Compl. ¶ 4, ECF
No. 1.  The Hermidas renewed their lease twice; once on a month-
to-month basis and once for another twelve months.  Stipulation
All Uncontested Facts ¶ 11; Def.'s Statement Undisputed Material
Facts Offered Supp. Def. Archstone Reading Mot. Summ. J. ("Def.'s
Statement Undisputed Facts"), ¶ 9, ECF No. 155.  Under the terms
of the May 14, 2007 lease, the Hermidas' were obligated to pay
Archstone Reading a monthly rent in the amount of $1,750 for the
term running from May 24, 2007 through May 23, 2008.  Stipulation
All Uncontested Facts ¶ 9; Rebecca Schwartz Aff. ("Archstone
Reading Lease Agreement") ARCHH00000054, ECF No. 156-1.  The
Hermidas moved into the apartment on May 24, 2007.  Stipulation
All Uncontested Facts ¶ 10.

On April 30, 2007, prior to commencement of the lease, the
Hermidas paid a one-time $475 "amenity use fee" to Archstone

Reading in a bill titled "Apartment Lease Agreement".
Stipulation All Uncontested Facts ¶ 6; Archstone Reading Lease
Agreement ARCHH00000018.  The Hermidas signed the Apartment Lease
Agreement, which included a definition that "in this lease, 'you'
means the resident (tenant)."  Archstone Reading Lease Agreement
ARCHH00000018.  Together with the amenity use fee, the Hermidas
also paid Archstone Reading $451.61 in prorated rent for the
month of May, 2007 and $2.58 in prorated trash removal fees for
the same period (out of a monthly trash fee of $10).  Def.'s
Statement Undisputed Facts, ¶ 13.  The Hermidas did not pay
Archstone Reading a last month's rent, or a security deposit at
or prior to the commencement of their tenancy.  Id. ¶ 14-15.
Furthermore, the Hermidas did not pay and Archstone Reading did
not request, any key or lock fee, at or prior to, the
commencement of their tenancy, although under the terms of lease,
the lock replacement fee was $50.  Id. ¶ 16.  The total amount
paid by the Hermidas to Archstone Reading at or prior to the
commencement of their tenancy was $929.19.  Id. ¶ 17.

Under the terms of their lease signed May 14, 2007, the
Hermidas were obligated to, and did, pay for utilities for their
apartment during the duration of the lease, including
electricity, gas, water/sewer, and trash.  Id. ¶ 18.

Jefflee Hermida was aware of the amenity use fee at the time
he completed the online rental application for Archstone Reading.

Id. ¶ 26.  When the Hermidas asked, either during their initial
tour of the Archstone Reading community or when they signed the
lease, what the amenity use fee was for, they were told that it
was for using the property's pool, gym, and outdoor grill.
Stipulation All Uncontested Facts ¶ 4.  Archstone Reading never
told the Hermidas that the amenity use fee was optional.  Id. ¶
7.  The Hermidas paid the amenity fee without objection before
leasing their apartment at Archstone Reading.  Def.'s Statement
Undisputed Facts, ¶ 24.

### C.   Federal Jurisdiction

Jurisdiction is proper under 28 U.S.C. § 1332.  There is
diversity among the parties, and the amount in controversy
exceeds $75,000, exclusive of interest and costs.  This case was
removed to this Court under 28 U.S.C. § 1453.  Jurisdiction is
thus also proper under 28 U.S.C. § 1331 as this case arises under
the laws of the United States.

## II.  ANALYSIS

### A.   Legal Standard

Summary judgment is proper where "there is no genuine issue
as to any material fact and the moving party is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is
"material" when it "might affect the outcome of the suit under
the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986).  A dispute of fact is "genuine" if "the evidence

is such that a reasonable jury could return a verdict for the
nonmoving party." Id. The moving party bears the burden of
showing that no genuine issue of material fact exists. Celotex
Corp. v. Catrett, 477 U.S. 317, 322 (1986). Courts must construe
the evidence in the light most favorable to the nonmoving party,
and draw all reasonable inferences in its favor. Anderson, 477
U.S. at 255.

While this is the standard of review in summary judgement,
here there are no factual inferences to draw. Rather, the
parties present differing views on purely legal questions of
statutory interpretation. See Rhode Island v. Narragansett
Indian Tribe, 19 F.3d 685, 691 (1st Cir. 1994) ("The search for
statutory meaning inevitably reduces to a pure question of
law."); see also Skinner v. Salem Sch. Dist., 718 F. Supp. 2d
186, 188 (D.N.H. 2010) ("Questions of statutory interpretation
are 'ripe for resolution.'") (quoting Simmons v. Galvin, 575 F.3d
24, 30 (1st Cir. 2009)). Unlike factual allegations, "[m]ere
legal conclusions 'are not entitled to the assumption of truth.'"
Sanchez v. Esso Standard Oil P.R., Inc., Civ. No. 08-2151(JAF),
2010 WL 3069551, at *2 (D.P.R. Aug. 2, 2010) (quoting Ashcroft v.
Iqbal, 129 S. Ct. 1937, 1950 (2009)). "[T]he Court is not
required to adopt purely legal conclusions asserted by the moving
party." Crooker v. United States, Civ. No. 08-10149-PBS, 2010 WL

3860597, at *5 (D. Mass. Sept. 29, 2010) (Saris, J.) (citing <u>Luc</u> v. <u>Wyndham Mgmt. Corp.</u>, 496 F.3d 85, 88 (1st Cir. 2007)).

**B.   The Language of The Security Deposit Statute Section 15B(1)(b) Is Unambiguous.**

Here, the underlying facts are undisputed, and the sole issue is one of law, the statutory interpretation of Massachusetts General Laws, chapter 186, section 15B(1)(b), viz., whether the language of the statute allows a landlord to charge an up-front amount of money different than the enumerated statutory categories in clauses (i) through (iv).  Following the statute, this Court is to focus on the charges made at or prior to the commencement of any tenancy and it need not consider any charge or fee made during or after the tenancy.

When determining if there is an ambiguity in the statute, the courts must look to the language of the statute itself. <u>Harvard Crimson, Inc.</u> v. <u>President & Fellows of Harvard Coll.</u>, 445 Mass. 745, 749 (2006).  "Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense."  <u>Taylor</u> v. <u>Burke</u>, 69 Mass. App. Ct. 77, 80 (2007) (quoting <u>Harvard Crimson, Inc.</u>, 445 Mass. at 749).

Courts have held that the language of section 15B is unambiguous and strict compliance is required.  <u>See generally</u> <u>Mellor</u> v. <u>Berman</u>, 390 Mass. 275, 279 (1983) (holding that the

8

language of Massachusetts General Laws, chapter 186, section 15B(7) is unambiguous); <u>Cote</u> v. <u>Sylvia</u>, 2008 Mass. App. Div. 27, 2008 WL 217396, at *1 (Jan. 22, 2008) (holding that the security deposit requirements imposed by section 15B are "unequivocal" and "[n]either ignorance, nor the absence of bad faith, on the part of the landlord is justification for noncompliance.") (citing <u>Mellor</u>, 390 Mass. at 279).

In the present case, both parties state, and this Court agrees, that section 15B is unambiguous, and the words should be given their ordinary meaning.  The pertinent language, found in section 15B(1)(b), reads:

> At or prior to the commencement of any tenancy, no lessor may require a tenant or prospective tenant to pay any amount in excess of the following:
> (i) rent for the first full month of occupancy; and,
> (ii) rent for the last full month of occupancy . . . ; and,
> (iii) a security deposit equal to the first month's rent . . . ; and,
> (iv) the purchase and installation cost for a key and lock.

The plain meaning of section 15B(1)(b) prohibits the landlord: at the inception of the tenancy, from requiring any tenant or prospective tenant, to "pay any amount in excess of" the enumerated categories in clauses (i) through (iv).

None of the parties dispute that section 15B(1)(b) refers to payments made by the tenants or prospective tenants at the inception of the tenancy, therefore this Court turns to the other issues.

9

**C.   The Hermidas Were Tenants When the Landlord Required Them to Pay the Amenity Use Fee.**

The Security Deposit Statute only prohibits charges to "tenants or prospective tenants."  Mass. Gen. L. ch 186, § 15B(1)(b).  In <u>Dolben Co.</u> v. <u>Friedmann</u>, 2008 Mass. App. Div. 1, 2008 WL 81549, at *4 (Jan. 2, 2008) the court held that it was a violation of the statute to charge a $35 application fee "once [the tenant] agreed to lease the unit."  The court reasoned, however, that a landlord may pass some reasonable costs of processing applications and other expenses incidental to the review of "<u>potential tenants</u> onto those seeking rental of a dwelling."  <u>Id.</u>  The court in <u>Dolben</u> does not define "potential tenant," as opposed to "tenants or prospective tenants."

The Hermidas were tenants when they paid the amenity fee to Archstone Reading.  The record shows that Jefflee Hermida was aware of the amenity use fee at the time he completed the online rental application; again, during the initial tour of the apartments, the Hermidas were told that Archestone Reading charged a one-time amenity use fee.  Prior to moving into their apartment, the Hermidas tendered $475 to Archstone Reading in satisfaction of the amenity use fee, $451.61 in prorated rent for the month of May, 2007 and $2.58 in prorated trash removal fee.  The fact that Archstone Reading made all these charges together with the first month rent, and under a bill titled "Apartment Lease Agreement" suggests that the parties intended to treat the

Hermidas as tenants.  Furthermore, the Apartment Lease Agreement unambiguously defines the term used for the Hermidas as "the resident (tenant)."  <u>See</u> Archstone Reading Lease Agreement ARCHH00000018.

Therefore, because Archstone Reading charged the $475 amenity fee once the Hermidas agreed to lease the unit, the landlord required the up-front payment from "tenants or prospective tenants" within the meaning of section 15B(1)(b). Now, this Court turns to the other issues where the parties differ in the interpretation of section 15B(1)(b).

**D.   Archstone Reading's Amenity Use Fee Is Not a Permissible Charge Within the Enumerated Provisions in Clauses (i) Through (iv).**

The issue is whether the provisions in clauses (i) through (iv) in section 15B(1)(b) ought be understood as a limit on the amount and type of fees a landlord can charge, or whether a landlord cannot exceed the sum of all the allowable charges listed.

The Hermidas read the statute as enumerating a list of permissible up-front charges, as well as a statutory cap upon each listed charge.  Conversely, Archstone Reading contends that section 15B(1)(b) ought be read as a total maximum amount resulting from the sum of the amounts listed in clauses (i) through (iv).

11

Archstone Reading adopts a construction of the phrase "any amount in the excess of" that treats the enumerated provisions (namely the first month's rent, last month's rent, security deposit, and cost for a lock and key) as a list of calculable components which, summed all together, result in total maximum amount a landlord can charge at the inception of the tenancy. This Court disagrees.

Archstone Reading has not produced any case that supports its interpretation, and Archstone Reading's interpretation of section 15B(b)(1) is incompatible with prior case law and the legislative intent.  Courts have construed the statute as prohibiting the landlord from charging a prospective tenant any amount for any purpose other than those listed, and in excess of the amount of each provision.

In <u>Dolben</u>, the Court held that a $35 application fee at the inception of the tenancy was unfair and deceptive practice, because it was "a charge in excess of those permitted by 186, § 15B," and landlords are prohibited "from requiring new tenants to pay moneys in addition to the first month's rent, the last month's rent, a security deposit, and the cost of purchasing and installing a new lock." <u>Dolben</u>, 2008 WL 81549, at *4.  The <u>Dolben</u> court read the phrase "any amount in excess of" simply as prohibiting a prospective tenant from being required to "pay moneys in addition to." <u>Id.</u>  Therefore, the court in <u>Dolben</u>

12

concluded that the $35 application fee violated the Security
Deposit Statute, because the landlord charged a fee different to
those listed in the statute.

Similarly in Carter v. Seto, 2005 Mass. App. Div. 62, 2005
WL 1383337, at *4 (June 23, 2005) the court held that it is a
violation of section 15B(1)(b)(iii) to demand and receive a $150
deposit for a garage door mechanism and electric eye unit in
excess of the security deposit equal to the first month's rent.
In Carter the landlord did not charge for the cost of purchasing
and installing a new lock. Id. at *3. The landlord did,
however, charge the tenant a $2,000 security deposit, and an
extra $150 deposit for the garage door mechanism and electric eye
unit. Id. at *1. The court held that the extra $150 was
intended as a security deposit and exceeded the amount permitted
under section 15B(1)(b)(iii). Id. at *4. The reasoning behind
the decision in Carter was that the landlord could not collect a
fee larger than permitted by the statute for each provision. Had
the court in Carter adopted Archstone Reading's interpretation of
the statute, the court would have been compelled to reduce the
$150 charged to the actual cost of a lock and key regardless
whether such a cost was incurred or not.

Here, the "amenity use fee" charged by Archstone Reading
does not conform to any of the categories of charges indicated in
section 15B(1)(b). The amenity use fee was an optional payment

13

of $475 to set off the costs for the use of the pool, the gym, and the outdoor grill at the property.  In addition, Archstone Reading required the Hermidas to pay $451.61 in prorated rent for the first month of occupancy.  Conversely, the landlord did not require, nor does the statute mandate, payment of a security deposit or the last month's rent.  Both parties admit that they did not intend the amenity use fee to be a security deposit. Although under the terms of lease, the fee for replacing all locks was set at $50, Archstone Reading did not charge this amount to the Hermidas, waiving its right to collect.  Therefore, each amount of the statutorily enumerated provisions had its corresponding charge or waiver thereof.  Even though Archstone Reading did not exceed any of the statutory categories, the amenity use fee did not fit within any of them.

Archstone Reading's interpretation of section 15B(b)(1) is also incompatible with the legislative intent.  The Security Deposit Statute is intended to afford protection to both the landlord and the tenant.  It protects the landlord by allowing it to charge certain advances of money prior to the commencement of the tenancy; the statute also limits the up-front charges that the landlord legally can collect from the tenant in order to prevent unfair or deceptive charges.[1]  See Jinwala v. Bizzaro, 24

---

[1] The statute ought be read in conjunction with Massachusetts General Laws, chapter 93A, section 2 ("Consumer Protection Statute"), and 940 Code of Massachusetts Regulations, section 3.17(4) promulgated thereunder which

Mass. App. Ct. 1, 7 (1987) (holding that the Legislature intended
a construction of the statute where "[a]n equitable balance is .
. . struck between the rights of landlords and those of
tenants."). The major legislative concern, however, has been for
the tenant. See Hampshire Vill. Assoc. v. District Court of
Hampshire, 381 Mass. 148, 152-53 (1980) ("[b]y limiting the
freedom of landlords and tenants to contract in this regard (as
to security deposits), the Legislature manifested a concern for
the welfare of tenants in residential property who, as a
practical matter, are generally in inferior bargaining positions
and find traditional avenues of redress relatively useless.")
(quoting Goes v. Feldman, 8 Mass. App. Ct. 84, 91 (1979)); see
also Taylor, 69 Mass. App. Ct. at 84 ("The over-all legislative
intent of the statute is amply demonstrated to be the protection
of the tenant. The legislative history of amendments to the
statute evince an increasing concern for the tenant."). To
protect the tenant, the Legislature has created statutory
limitations on the amount and purpose for which the landlord can
legally collect moneys. Amendments to the statute show that the
Legislature has also reduced the amounts of money the landlord

provides that "it shall be an unfair or deceptive practice for an owner to:
(a) require a tenant or prospective tenant, at or prior to the commencement of
any tenancy, to pay any amount in excess of the following:
    1. rent for the first full month of occupancy; and,
    2. rent for the last full month of occupancy . . . ; and,
    3. a security deposit equal to the first month's rent; and,
    4. the purchase and installation cost for a key and lock."
940 Mass. Code Regs. § 3.17(4).

can collect prior to the commencement of the tenancy, as well as
increasing the landlord's accountability for the safekeeping and
expenditure of those amounts.[2]  This trend is also followed in
other sections of the Security Deposit Statute.  <u>See</u> <u>Commonwealth</u>
v. <u>Chatham Development Co.</u>, 49 Mass. App. Ct. 525, 527 (2000)
("To say that [constable] costs may be assessed by agreement and
awarded before the close of proceedings is more than a
stretch.").  Thus, Archstone Reading's interpretation is
incompatible with the legislative intent because its adoption
would erode the protection granted by section 15B(1)(b) to
tenants and would allow landlords to circumvent the statutory
limitations on the amount and purpose for which the landlord can
legally collect under section 15B(1)(b).

Therefore, this Court concludes that even though Archstone
Reading did not exceed any of the statutory categories, the
amenity use fee did not fit within any of them.  Because section
15B(1)(b) prohibits the landlord from charging up-front any
amount in addition to those enumerated provisions, Archstone

---

[2] <u>Hampshire Village Associates</u>, 381 Mass. at 151-152 ("Section 15B is
not without reason.  The question of security deposits has long been agitated
. . . and the Legislature has attempted progressively to deal with them. In
1969, s[ection] 15B provided on the point merely that a landlord was not to
require a security deposit in excess of two months' rent. St.1969, c. 244.  By
September 1, 1978, when that section reached its present form (see St.1978, c.
553, ss 2, 3), the legislative controls were much elaborated. A security
deposit is not to exceed one month's rent, and is to remain the tenant's
property and be held as a fund in trust in an interest-bearing account in a
bank whose name and location must be notified to the tenant; and there is
provision for payment of interest to the tenant on certain terms.").

Reading exceeded the charges allowed by the Security Deposit Statute.

## III.   CONCLUSION

For these reasons, this Court DENIES Archstone Reading's motion for summary judgment, ECF No. 153, in its entirety, and instead GRANTS summary judgment on liability under Massachusetts General Laws, chapter 93A, section 2 for the non-moving party, the Hermidas.  Fed. R. Civ. P. 56(f)(1) ("the court may grant summary judgment for a nonmovant.").[3]

SO ORDERED.

/s/ William G. Young

WILLIAM G. YOUNG
DISTRICT JUDGE

---

[3] A federal district court may certify a question for decision by the Supreme Judicial Court "if there are involved in any proceeding before it questions of law of [the Commonwealth of Massachusetts] which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of [the Supreme Judicial Court]."  Mass. S.J.C. Rule 1:03, § 1 (2010).  This Court is aware that here there is no controlling precedent, that the interpretation of the Massachusetts Security Deposit Law, Mass. Gen. L. ch 186 § 15B(1)(b), is purely a question of Massachusetts state law, and that the cases relied on herein are primarily those of the lower courts of the Commonwealth. Should either the Hermidas or Archstone wish to bring a motion for certification, this Court will entertain it.  Mass. S.J.C. Rule 1:03, § 2 (a question may certified "upon the motion of any party to the cause").