UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
─────────────────────────────    )
MAEVE HERMIDA and                )
JEFFLEE HERMIDA, individually    )
and on behalf of all others      )
similarly situated,              )
                                 )
               Plaintiffs,       )
        v.                       )
                                 )   CIVIL ACTION
ARCHSTONE, ARCHSTONE AVENIR      )   NO. 10-12083-WGY
GP LLC, ARCHSTONE AVENIR LP,     )
ASN QUINCY LLC, QUARRY HILLS     )
LLC, ASN BEAR HILL LLC, ASN      )
NORTH POINT I LLC, ASN NORTH     )
POINT II LLC, ASN CAMBRIDGEPARK  )
LLC, ARCHSTONE CRONIN'S          )
LANDING, ASN WATERTOWN LLC,      )
ARCHSTONE COMMUNITIES LLC,       )
ARCHSTONE KENDALL SQUARE, ASN    )
READING LLC, and ASN PARK        )
ESSEX, LLC                       )
                                 )
               Defendants.       )
─────────────────────────────    )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                          June 14, 2013

## I.   INTRODUCTION

This is a case of first impression.  Maeve and Jefflee

Hermida (collectively, the "Hermidas") brought this suit for

declaratory judgment against their former landlord, ASN Reading

LLC d/b/a Archstone Reading ("Archstone") and fourteen other

affiliated entities.  The Hermidas sent a pre-suit demand letter

on their behalf and on that of the putative class and, after the

Court certified the class against Archstone alone, the Hermidas

1

sent an additional post-suit demand letter.  Archstone tendered a reasonable offer to the Hermidas individually in response to the pre-suit demand and later made a reasonable offer to the certified class in response to the post-suit demand.  Both offers were rejected.

In light of the Chapter 93A fee-shifting policies, the Court requested that the parties brief whether the tender of the original settlement cut off the recovery of attorneys' fees where the Hermidas made their demand as part of the putative class from the inception of the demand up until the offer to the class was made.

### A.   Stipulated Facts

The Hermidas rented apartment unit #302 located at Archstone Circle, Reading, Massachusetts, a property then owned by Archstone.  Joint Stipulation Uncontested Facts ("Stipultated Facts") ¶ 9, ECF No. 198.  The Hermidas paid a one-time amenity-use fee of $475 to Archstone on April 30, 2007, in association with their initial lease agreement.  Id.

On August 3, 2010, counsel for the Hermidas sent Archstone a demand letter (the "First Demand Letter") alleging that Archstone and its affiliated entities violated Massachusetts General Laws chapter 186, section 15B (the "Security Deposit Statute") and Massachusetts General Laws chapter 93A (the "Consumer Protection Statute") by charging up-front amenity-use fees.  Id. ¶¶ 1, 5.

The Hermidas claimed actual "damages in the amount of $475.00, plus statutory interest since the date of payment." Id. ¶ 1; see also Aff. Diane R. Rubin Supp. Def. Archstone's Notice Removal, Ex. 2, Mass. Gen. Laws Ch. 93A Class Action Demand Letter ("First Demand Letter") 2, ECF No. 1-1 (stating that the Hermidas sent the written demand letter on behalf of themselves and the "class of people who have lived in Archstone properties in Massachusetts from August 3, 2006 up to and including August 3, 2010").

On September 1, 2010, in response to the Hermidas' demand letter, and within thirty days of the date that demand was sent, Archstone offered to pay the Hermidas $665.67, which included both $475 in actual damages and statutory interest of twelve percent simple interest per annum calculated from the date the Hermidas paid the amenity-use fee through the date of the tender. Stipulated Facts ¶¶ 2-3; see also Aff. Rebecca J. Schwartz, Ex. B, Letter from Peter E. Strand, Shook, Hardy & Bacon L.L.P., to Matthew J. Fogelman, Fogelman & Fogelman LLC (Sept. 1, 2010) ("Archstone's Resp. Hermidas") 2, ECF No. 187-2 (noting that Archstone's offer extended only to the Hermidas). Archstone expressly reserved the right to respond to any subsequent demand letter made on behalf of the "certified class" and tender a settlement offer to the members of the class that would "limit any recovery to the relief tendered." Archstone's Resp. Hermidas 2 (quoting Mass. Gen. Laws ch. 93A, § 9(3)) (internal quotation

marks omitted).  On October 28, 2010, the Hermidas filed a class action complaint in the Massachusetts Housing Court, which constituted an implied rejection of Archstone's offer. Stipulated Facts ¶¶ 3-4; see Aff. Diane R. Rubin Supp. Def. Archstone's Notice Removal, Ex. 1, Class Action Compl. ("Compl.") ¶¶ 1, 51, ECF No. 1-1.  On December 2, 2010, Archstone removed the action to this Court pursuant to the Class Action Fairness Act.  Stipulated Facts ¶ 6.

On October 21, 2011, the Hermidas sent a demand letter (the "Second Demand Letter") to Archstone on behalf of the members of the certified class.  Aff. Rebecca J. Schwartz, Ex. H, Mass. Gen. Laws Ch. 93A Class Action Demand Letter 2, ECF No. 187-8; see also Stipulated Facts ¶ 15.  On November 18, 2011, Archstone responded to the Second Demand Letter by tendering a settlement offer of $155,447.47 to all of the class members but the Hermidas, which comprised a full refund of each class members' amenity-use fee plus twelve percent simple interest on the fee calculated from the date each class member paid the fee through the date of the tender.  Stipulated Facts ¶ 16; see also Aff. Rebecca J. Schwartz, Ex. I, Letter from Peter E. Strand, Shook, Hardy & Bacon L.L.P., to Matthew J. Fogelman, Fogelman & Fogelman LLC (Nov. 18, 2011) ("Archstone's Resp. Class") 1, ECF No. 187-9. On February 13, 2012, the Hermidas filed in essence a motion for clarification, despite Archstone's warnings that it would

4

consider such a motion to be a rejection of the settlement offer
to the class.  Id. ¶¶ 17-19 (noting that the Hermidas withdrew
the motion on February 28, 2012, one day after Archstone had
filed its opposition).

**II.  ANALYSIS**

**A.  Entitlement to Attorneys' Fees**

To award attorneys' fees, this Court must first determine if
the fees are warranted, and, if so, the Court must determine the
amount of fees appropriate.  See Hensley v. Eckerhart, 461 U.S.
424, 433 (1983).

**1.  Chapter 93A's Demand Letter Requirement**

Prior to filing a Chapter 93A claim, the plaintiff must send
a written demand letter "identifying the claimant and reasonably
describing the unfair or deceptive act or practice . . . and the
injury suffered."  Mass. Gen. Laws ch. 93A, § 9(3).  "The
purposes of the [demand] letter are twofold: (1) to encourage
negotiation and settlement by notifying prospective defendants of
claims arising from allegedly unlawful conduct and (2) to operate
as a control on the amount of damages which the complainant can
ultimately recover."  Spring v. Geriatric Auth. of Holyoke, 394
Mass. 274, 288 (1985) (quoting Slaney v. Westwood Auto., Inc.,
366 Mass. 688, 704 (1975)) (internal quotation marks omitted).

Multiple damages may be awarded if the defendant refuses to
tender reasonable relief despite having "knowledge or reason to

know that the act or practice complained of violated [Chapter 93A, Section 2]."  Mass. Gen. Laws ch. 93A, § 9(3); <u>Burnham</u> v. <u>Mark IV Homes, Inc.</u>, 387 Mass. 575, 583 (1982) ("[The] award of multiple damages is an attempt to promote prelitigation settlements by making it unprofitable for the defendant either to ignore the plaintiff's request for relief or to bargain with the plaintiff with respect to such relief in bad faith." (quoting <u>Heller</u> v. <u>Silverbranch Constr. Corp.</u>, 376 Mass. 621, 627 (1978)) (internal quotation mark omitted)).  Conversely, where a plaintiff rejects a defendant's reasonable settlement offer and later prevails at trial, the plaintiff is entitled to an award of attorneys' fees, but "the court shall deny recovery of attorney's fees and costs which are incurred after the rejection of [the] reasonable written offer of settlement."  Mass. Gen. Laws ch. 93A, § 9(4); <u>see also</u> <u>Kohl</u> v. <u>Silver Lake Motors, Inc.</u>, 369 Mass. 795, 797 (1976) ("[R]ecovery in an action under [Chapter] 93A may not exceed the relief tendered (plus attorney's fees incurred prior to the date of the plaintiff's rejection of the tender).").  A defendant is not required to include attorneys' fees in making a reasonable settlement offer.  <u>Kohl</u>, 369 Mass. at 801 ("In measuring the reasonableness of a tender of settlement under [Chapter 93A, Section 9(3)] the judge should not treat attorney's fees as part of the 'injury actually suffered by the petitioner.'"); <u>see also</u> <u>Applied Image Reprographics, Inc.</u> v.

Citizens Bank of Mass., No. SUCV200505058A, 2012 WL 2913528, at

*11 (Mass. Super. Ct. June 5, 2012) (Connors, J.) ("[T]he

plaintiffs' own legal fees are not countable in making the

assessment of what was a reasonable offer to compensate the

plaintiffs for the harm actually suffered." (citing RGJ Assocs.,

Inc. v. Stainsafe, Inc., 338 F. Supp. 2d 215, 239 (D. Mass. 2004)

(Bowler, M.J.))).

### 2.   Demand Letter on Behalf of a Class

Under Chapter 93A, a claimant may "bring the action on

behalf of himself and such other similarly injured and situated

persons."  Mass. Gen. Laws ch. 93A, § 9(2).

> [Chapter 93A, Section 9(4)] does not refer to class
> actions or to named class action plaintiffs.  Nor do
> other sections of Chapter 93A specifically discuss
> multiple-party lawsuits.  The statute simply offers a
> cause of action to a consumer or a group of consumers who
> claim that a business has defrauded them.[1]

Spielman v. Genzyme Corp., 251 F.3d 1, 9 (1st Cir. 2001).

---

[1] The statute affords the same relief to a consumer whether she brings her claim individually or as part of a class of consumers.  See Leardi v. Brown, 394 Mass. 151, 163-64 (1985) (awarding each tenant statutory damages because "Chapter 93A in no way distinguishes between the relief that is available in the individual and class suits," id. (quoting Rice, New Private Remedies for Consumers: The Amendment of Chapter 93A, 54 Mass. L.Q. 307, 319 (1969) (internal quotation mark omitted)).  The Supreme Judicial Court has emphasized that a contrary "interpretation of [Chapter] 93A, § 9(2), would effectively eviscerate what was intended to be a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." Id. at 164 (quoting Rice, supra, at 316) (internal quotation marks omitted).

Once the initial demand letter requirement under Chapter 93A has been satisfied, a putative class action takes on a life of its own.  This is true even when the party who initially sent the letter is no longer part of the class or other plaintiffs join the class without sending an additional demand letter.  <u>Bosque</u> v. <u>Wells Fargo Bank, N.A.</u>, 762 F. Supp. 2d 342, 354 (D. Mass. 2011) (Saylor, J.) ("[U]nder Massachusetts law a demand letter that identifies the particularized injuries of one class representative claimant and gives notice to defendant of the pendency of the class action is sufficient.").

A plaintiff may initiate a Chapter 93A claim without identifying it in the demand letter as a class action.  <u>See</u> Mass. Gen. Laws ch. 93A, § 9(2); <u>Baldassari</u> v. <u>Public Fin. Trust</u>, 369 Mass. 33, 42 (1975) ("If a proper demand is made by one plaintiff, . . . we think he and others similarly situated may join in a class action to redress that injury and similar injuries caused by the same act or practice."), <u>recognized as superseded by statute in</u> <u>Leardi</u> v. <u>Brown</u>, 394 Mass. 151, 158 (1985); <u>see also</u> <u>Bosque</u>, 762 F. Supp. 2d at 354 (citing <u>Baldassari</u>, 369 Mass. at 42).  Chapter 93A, Section 9(3) provides that a demand letter need only be made on the plaintiff's own behalf, even if the plaintiff is proposing to represent a class of similarly situated persons.  <u>Richards</u> v. <u>Arteva Specialties S.A.R.L.</u>, 66 Mass. App. Ct. 726, 731-32 (2006).

Here, the Court looks at the Hermidas' claims, made only on their own behalf, in the First Demand Letter to decide whether the Hermidas satisfied the demand requirements of Chapter 93A, Section 9(3). The Hermidas properly sent a written demand letter to Archstone prior to filing their complaint. Stipulated Facts ¶¶ 1, 4-5. The First Demand Letter gave adequate notice of the Hermidas' claims, identifying the Hermidas as former tenants of Archstone and reasonably describing how they suffered damages when Archstone charged an up-front amenity-use fee in violation of the Security Deposit Statute and Consumer Protection Statute. See First Demand Letter 1-2. The Hermidas also encouraged Archstone to make a reasonable settlement offer. Id. at 2-3. Therefore, the Hermidas' First Demand Letter sufficiently described the claimants, the unfair or deceptive practice, and the injury suffered with enough detail for Archstone to ascertain its exposure and to initiate negotiations. Richards, 66 Mass. App. Ct. at 733-34 (upholding demand letter as sufficiently detailed). Moreover, although the Hermidas were not required to, they sufficiently identified the class as the "class of people who have lived in Archstone properties in Massachusetts from August 3, 2006 up to and including August 3, 2010" and paid the amenity-use fee. First Demand Letter 2. Even if the Hermidas had not done so, other members of the class could have joined the action without a new demand letter. See, e.g., Bosque, 762 F.

9

Supp. 2d at 354; <u>Durmic</u> v. <u>J.P. Morgan Chase Bank, NA</u>, No.
10-CV-10380-RGS, 2010 WL 4825632, at *6 (D. Mass. Nov. 24, 2010)
(Stearns, J.); <u>Baldassari</u>, 369 Mass. at 42.

### 3.   Response to a Demand Letter on Behalf of a Class

A plaintiff's recovery under Chapter 93A "may not exceed the
relief tendered" by the defendant, so long as the settlement
offer is reasonable.  <u>Kohl</u>, 369 Mass. at 797.  It is unclear,
however, whether a plaintiff is required under Chapter 93A to
send an additional demand letter after a putative class is
certified.  <u>See Richards</u>, 66 Mass. App. Ct. at 738 & n.12 (noting
it is unsettled "whether one or more new demand letters would be
required or even appropriate" post-certification).

In <u>Richards</u> v. <u>Arteva Specialties S.A.R.L.</u>, 66 Mass. App.
Ct. 726, the Massachusetts Appeals Court considered whether a
plaintiff's demand letter made on behalf of herself and a
putative class "reasonably describ[ed] . . . the injury suffered,
as required by" Chapter 93A, Section 9(3).  <u>Id.</u> at 727 (quoting
Mass. Gen. Laws ch. 93A, § 9(3)) (internal quotation marks
omitted).  First, the court established that under Chapter 93A,
Section 3, a demand letter need only be made on the individual
claimant's own behalf, not that of a putative class, and that a
defendant need only respond to the individual claimant's demand,
not to any demand made on behalf of a putative class.  <u>Id.</u> at
732.  The Appeals Court concluded that the reasonableness of a

demand letter made prior to the certification of a putative class
should be evaluated solely on "the description of the individual
claimant's own injury," and not that of the entire putative
class.  Id. at 733.  The court declined to answer, however,
whether plaintiffs should send an additional demand letter after
a putative class has been certified.  Id. at 732-33.

    The Richards court reasoned that such an interpretation of
Section 9(3) was consistent with the provision's dual purpose of
encouraging settlement and limiting the potential recovery of
damages, as it may be virtually impossible to make a demand on
behalf of a putative class, or tender a settlement offer to that
class, "at a time when both the size of the eventual plaintiff
class . . . and the total extent of their eventually claimed
damages [is] unknown."  Id. at 733.  The court suggested,
however, that when a putative class's damages are "reasonably
ascertainable," a defendant's settlement offer should redress not
just the lead plaintiff's injury, but those of the entire
putative class.  Id. at 735 n.9 (citing Fredericks v. Rosenblatt,
40 Mass. App. Ct. 713, 717-18 (1996)).

    Similarly, another court in this district concluded that an
offer to settle an individual Chapter 93A claim coupled with an
"express statement that 'no payment is being made to the putative
class [the petitioner] claims to represent,'. . . was clearly
insufficient to remedy the classwide injury alleged by [the

11

petitioner] and fell well short of the maximum relief [the petitioner] might obtain . . . at trial." Suk Jae Chang v. Wozo LLC, No. 11-10245-DJC, 2012 WL 1067643, at *8 (D. Mass. Mar. 28, 2012) (Casper, J.) (holding defendant's settlement offer to lead plaintiff alone did not deprive the putative class of standing in Chapter 93A suit because it "was clearly insufficient to remedy the [alleged] classwide injury").

The plain language of Chapter 93, Section 9(3) limits the "recovery to the relief tendered." Mass. Gen. Laws ch. 93A, § 9(3). If the defendant tenders relief solely to the individual petitioner, she cannot expect this offer to control the amount of recovery for the entire class, to whom no relief was tendered. Additionally, a second round of demands and offers made after the certification of a class does not advance the purposes of Chapter 93A, Section 9(3), which are to give prospective defendants notice, avoid litigation, and encourage pre-suit negotiations and settlements. See Baldassari, 369 Mass. at 42 ("If no reasonable tender of settlement is made in response to the first demand, further demands are not likely to serve any useful purpose and are not required. The modern class action is 'designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions.'"); see also Spring, 394 Mass. at 288 (quoting Slaney, 366 Mass. at 704); Burnham, 387 Mass. at 583.

12

Here, on September 1, 2010, Archstone responded to the First Demand Letter by offering the Hermidas $665.67, the entire amount of their amenity-use fees plus interests.  Archstone's Resp. Hermidas 1.  Archstone properly extended the offer only to the Hermidas, id. at 2, as it was not required to make a settlement offer to the uncertified class, Richards, 66 Mass. App. Ct. at 732.  Further, Archstone reserved the right to respond to any subsequent demand letter made on behalf of the "certified class" and tender a settlement offer to the members of the class that would "limit any recovery to the relief tendered."  Archstone's Resp. Hermidas 2 (citing Mass. Gen. Laws ch. 93A, § 9(3); Richards, 66 Mass. App. Ct. at 738 & n.12).

There is no dispute that Archstone's offer to pay the totality of the Hermidas' amenity-use fee plus interest was timely and reasonable.  In making a reasonable settlement offer, Archstone was not required to include attorneys' fees.  Kohl, 369 Mass. at 801 ("In measuring the reasonableness of a tender of settlement under [Chapter 93A, Section 9(3)] the judge should not treat attorney's fees as part of the 'injury actually suffered by the petitioner.'"); see Applied Image Reprographics, Inc., 2012 WL 2913528, at *11 ("[L]egal fees are not countable [under Chapter 93A, Section 9(3) in making the assessment of what was a reasonable offer to compensate the plaintiffs for the harm actually suffered." (citing RGJ Assocs., 338 F.Supp. 2d at 239)).

13

The Hermidas implicitly rejected Archstone's offer by filing a complaint, thus triggering Chapter 93A, Section 9(4), which limits their recovery to the relief tendered and attorneys' fees incurred prior to the date of the rejection.  <u>See</u> Mass. Gen. Laws ch. 93A, § 9(4); <u>Kohl</u>, 369 Mass. at 797.

It would be incongruent for Archstone, however, to tender a settlement offer to the Hermidas to refund their amenity-use fee but turn a blind eye to the rest of Archstone's tenants who also paid amenity-use fees and suffered a similar injury.  After the Hermidas First Demand Letter, Archstone knew or had reason to know that its amenity-use fee violated the Massachusetts Security Deposit Statute as to not only the Hermidas but also the rest of the tenants.  <u>See</u> <u>Burnham</u>, 387 Mass. at 583 ("The knowledge or reason to know is that which exists after receipt of the complaint and not at the time of the alleged violation.").  Therefore, Archstone cannot expect that the Hermidas' rejection of its offer to settle the Hermidas' individual Chapter 93A claim would limit the recovery of the entire class.  Archstone's offer was clearly insufficient to remedy the classwide injury and did not provide the class with a reasonable basis to encourage pre-suit negotiations and settlements.

   **4.    The Certified Class Is Entitled to Attorneys' Fees
           from the Inception of the Class Action.**

No Massachusetts court has yet decided whether the rejection of a reasonable offer made to the individual claimant, who made a

pre-suit demand both on behalf of herself and a putative class, may limit recovery for attorneys' fees for the entire class.

Under Massachusetts law, if the Court determines that there has been a violation of Chapter 93A, Section 2, "the petitioner shall . . . be awarded reasonable attorney's fees and costs incurred in connection" with "any action," irrespective of the amount in controversy.  Mass. Gen. Laws ch. 93A, § 9(4); see also id. § 2(a) (defining acts prohibited under Chapter 93A as any "[u]nfair methods of competition and unfair or deceptive acts or practices in . . . any trade or commerce").

"During the period between the commencement of a suit as a class action and the court's determination that it may be so maintained, the suit should be treated as a class action." Doucette v. Ives, 947 F.2d 21, 30 (1st Cir. 1991).  "[E]ven after the named plaintiff's individual claim is satisfied and technically she no longer is a member of the class, she properly might continue to represent the class in vindicating the asserted rights." Wolf v. Comm'r of Pub. Welfare, 367 Mass. 293, 300 (1975) (citing Sosna v. Iowa, 419 U.S. 393 (1975)); see also Meaney v. OneBeacon Ins. Grp., LLC, No. 07-1294-BLS2, 2009 WL 884613, at *7-9 (Mass. Super. Ct. Feb. 25, 2009) (Neel, J.) (holding that a timely and effective offer to an individual claimant "will not serve to moot all claims brought . . . on behalf of the putative class").

15

"The award belongs to the plaintiffs, not the attorneys."
Maston v. Poirier, No. 11-P-358, 2012 WL 1398619, at *2 (Mass.
App. Ct. Apr. 24, 2012) ("Regardless of the fee arrangements
between the attorneys and the plaintiffs, having prevailed on
their [Chapter] 93A claims, the plaintiffs were entitled to
recover an award of reasonable attorneys' fees."); Graves v. R.M.
Packer Co., 45 Mass. App. Ct. 760, 771 (1998) ("The award of fees
under [Chapter] 93A belongs to the prevailing party, not the
attorney.").

The courts have not, however, clearly defined whether
attorneys' fees awarded under Chapter 93A, Section 9 belong to
the individual petitioner or to the class.  Compare Spielman, 251
F.3d at 10 (declining to aggregate attorneys' fees under Chapter
93A to named plaintiff and instead prorating fees across the
entire class), with Ciardi v. F. Hoffman-La Roche, Ltd., No.
Civ.A. 99-11936-GAO, 2000 WL 159320, at *2 (D. Mass. Feb. 7,
2000) (O'Toole, J.) (noting that "the statute uses the term
'petitioners' to refer to unnamed class members" and that Chapter
93A, Section 9(4) "provides for an award of attorneys' fees to
the 'petitioner,' . . . and so any fees awarded would go only to
the named plaintiff, not the class generally").  The plain
language of Chapter 93A, Section 9(4) mandates an award of fees
in "any action commenced hereunder . . . [unless the petitioner
rejects] a reasonable written offer of settlement . . . required

16

by this section," Mass. Gen. Laws ch. 93A, § 9(4), regardless of whether these fees belong to the petitioner or the class.

Here, Archstone argues that the Hermidas' rejection of the offer to them as individuals foreclosed recovery of attorneys' fees for the putative class until the class was certified.  Def. ASN Reading LLC's Br. Regarding Allowability Att'ys' Fees ("Archstone's Br.") 3-4, ECF No. 201.  Specifically, Archstone argues that prior to the class being certified, the Hermidas' counsel performed legal work solely on behalf of the Hermidas and that it was not until September 15, 2011, when the class was certified, that the other class members actually entered the lawsuit.[2]  Id. at 3 n.2.

_____

[2] Archstone also alleges that the attorneys' fees ought be paid out of its offer to the class pursuant to the common fund doctrine.  Archstone's Br. 10-12.  "The common fund doctrine is founded on the equitable principle that those who have profited from litigation should share its costs."  In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 305 n.6 (1st Cir. 1995).  "[A] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  Id. at 305 (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)) (internal quotation marks omitted); see also Blum v. Stenson, 465 U.S. 886, 900 n.16 (1984) (allowing an attorney to calculate out of the common fund a "reasonable fee . . . based on a percentage of the fund bestowed on the class").  The First Circuit, however, has disfavored the creation of a common settlement fund from which members of the certified class can be paid in Chapter 93A claims.  See Spielman, 251 F.3d at 10 ("[Were the court to] exercise discretion to award the named plaintiff attorney's fees from a common settlement fund, the award would simply be the unremarkable result of an exercise of the equitable discretion of the trial court rather than the mandated result of any language in Chapter 93A.").

17

The Hermidas argue that they have prosecuted the case as a class action since the initial demand letter and, upon an insufficient offer to refund classwide amenity-use fees, they were duty-bound to reject the offer, pursue the class action, and reasonably incur costs and legal fees in advancing the interests of the class.  Mem. Concerning Payment Class-Action Att'ys' Fees Pursuant Mass. Gen. Laws Ch. 93A ("Hermidas' Br.") 1-2, ECF No. 200.

This Court holds that a petitioner's rejection of a settlement offer to the individual petitioner alone does not limit the recovery of damages or attorneys' fees available to the class because the statute provides that the petitioner shall be awarded attorneys' fees in "any action commenced hereunder." Mass. Gen. Laws ch. 93A, § 9(4).  Additionally, interpreting an offer to an individual claimant alone as preventing an entire putative class from recovering attorneys' fees is analogous to "picking off" the named plaintiff in a putative class action.[3]

---

[3] Involuntary resolution of a case usually arises in a class action scenario where the defendant tries to "pick off" or "buy off" class representatives:

> These cases arise when, prior to class certification, a defendant in a proposed class action gives the named plaintiff the entirety of the relief claimed by that individual. The defendant then attempts to obtain dismissal of the action, on the basis that the named plaintiff can no longer pursue a class action, as the named plaintiff is no longer a member of the class the plaintiff sought to represent.

Watkins v. Wachovia Corp., 172 Cal. App. 4th 1576, 1589 (2009).

Some courts have imposed limitations on this maneuver.  <u>See</u>
<u>Deposit Guar. Nat'l Bank, Jackson, Miss.</u> v. <u>Roper</u>, 445 U.S. 326,
339 (1980) ("Requiring multiple plaintiffs to bring separate
actions, which effectively could be 'picked off' by a defendant's
tender of judgment before an affirmative ruling on class
certification could be obtained, obviously would frustrate the
objectives of class actions."); <u>Griffith</u> v. <u>Bowen</u>, 678 F. Supp.
942, 946 (D. Mass. 1988) (characterizing defendant's "voluntary
payment" to class representatives as "deceptively kind" and as
"conjur[ing] up the spectre that the [defendant] may, in effect,
be attempting somehow to end this litigation before the claims
presented here are addressed").  Massachusetts courts have
endorsed this view in Chapter 93A class action claims.  In <u>Meaney</u>
v. <u>OneBeacon Insurance Group, LLC</u>, No. 07-1294-BLS2, 2007 WL
5112809 (Mass. Super. Ct. June 12, 2007) (Gants, J.), the
Superior Court sitting in and for Suffolk County rejected the
proposition that a defendant's settlement offer to a named
plaintiff precluded additional classwide Chapter 93A claims on
the ground that the defendant had offered to settle the
plaintiff's individual Chapter 93A claim.  <u>Id.</u> at *2.  The <u>Meaney</u>
court held:

> [The defendant] may not avoid a class action simply by
> paying the amount due to the named plaintiff.  The
> plaintiffs in their complaint have raised a significant
> legal claim which is entitled to resolution . . . . [The
> defendant] cannot evade resolution of this legal
> question, involving small amounts of money for each
> individual [plaintiff] but larger amounts of money for
> the putative class . . . simply by paying [the small
> amount] to the named plaintiff, since the plaintiff seeks
> to act on behalf of the class of insureds similarly
> situated.  Rather, [the defendant] can evade resolution
> of this issue only if [the defendant] were to commit to
> paying [the requested amount] to all [plaintiffs].

<u>Id.</u>  The circuits are split on whether a defendant may "pick off"
the named plaintiffs in a class action.  The split is most
clearly exemplified in cases where courts have compelled
acceptance of a settlement offer under Federal Rule of Civil
Procedure 68.  <u>See, e.g.</u>, <u>Pitts</u> v. <u>Terrible Herbst, Inc.</u>, 653
F.3d 1081, 1092 (9th Cir. 2011) (holding that rejection of a
defendant's Rule 68 offer by putative class representative did
not moot the class action); <u>Lucero</u> v. <u>Bureau of Collection</u>
<u>Recovery, Inc.</u>, 639 F.3d 1239, 1249 (10th Cir. 2011) ("[A]
rejected offer of judgment for statutory damages and costs made

Massachusetts law disfavors the use of a settlement offer to "pick off" named plaintiffs in Chapter 93A class actions where the offer is insufficient to "cure the injury alleged in [a Chapter] 93A demand letter" made on behalf of a putative class. Suk Jae Chang, 2012 WL 1067643, at *9, *11.

Here, the certified class prevailed in its action under Chapter 93A, Section 2.  Therefore, the Hermidas are entitled to reasonable attorneys' fees and costs incurred in connection with the action brought on behalf of the class less the attorneys' fees and costs incurred in connection with their individual claims.  This Court rejects Archstone's contrary interpretation.  First, Archstone's contention that the Hermidas' counsel did not advance the interests of the class until it was certified contradicts First Circuit law establishing that during the period

---

to a named plaintiff does not render the case moot under Article III."); Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 920-21 (5th Cir. 2008) (holding that a Rule 68 offer of judgment does not moot the case); Weiss v. Regal Collections, 385 F.3d 337, 347-48 (3d Cir. 2004) (stating that a Rule 68 offer of judgment did moot plaintiff's individual claims, but allowing a motion to certify plaintiff's class to relate back to his original complaint for jurisdictional purposes); Nash v. CVS Caremark Corp., 683 F. Supp. 2d 195 (D.R.I. 2010) ("Nothing in the text of Rule 68 compels dismissal of a case for lack of subject matter jurisdiction when a plaintiff rejects an adequate offer of judgment."). But see O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 572 (6th Cir. 2009); Holstein v. City of Chicago, 29 F.3d 1145, 1147 (7th Cir. 1994) (holding that when an offer of judgment constitutes full relief for the plaintiff's substantive claims, the plaintiff ceases to have a personal stake in the case and the court lacks jurisdiction); Abrams v. Interco Inc., 719 F.2d 23, 32 (2d Cir. 1983).

between the commencement of a suit and the class action certification "the suit should be treated as a class action." <u>Doucette</u>, 947 F.2d at 30.   Second, as explained above, a defendant cannot expect that the rejection of an offer tendered to an individual petitioner would limit the recovery of an entire class.   <u>See</u> <u>supra</u> section II.A.3.   Although tender of an offer may limit the recovery for claims brought by the petitioner on his or her own behalf, the statute mandates attorneys' fees in "any action," and therefore limitation of a petitioner's individual Chapter 93A claim will not limit the petitioners' attorneys' fees incurred on the action brought on behalf of the class.   <u>Cf.</u> <u>Wolf</u>, 367 Mass. at 300 ("[E]ven after the named plaintiff's individual claim is satisfied and technically she no longer is a member of the class, she properly might continue to represent the class in vindicating the asserted rights." (citing <u>Sosna</u>, 419 U.S. 393)).

   **B.   Calculation of Attorneys' Fees**

      **1.   Calculation of Attorneys' Fees Under Chapter 93A**

   Reasonable attorneys' fees under Chapter 93A are determined using a "less structured, more flexible approach" than the lodestar method.   <u>Trenwick Am. Reinsurance Corp.</u> v. <u>IRC, Inc.</u>, No. 07cv12160-NG, 2011 WL 2009919, at *2 (D. Mass. May 23, 2011) (Gertner, J.) (citing <u>Linthicum</u> v. <u>Archambault</u>, 379 Mass. 381, 388 (1979)).   "Attorney's fees are recoverable under [Chapter

93A, Section 9(4)] only in that amount which represents just compensation for the services of counsel in the case viewed as a whole." <u>Limina</u> v. <u>Tenaglia</u>, No. 9134, 1992 WL 64769, at *3 (Mass. App. Div. Mar. 26, 1992) (citing <u>Hanner</u> v. <u>Classic Auto Body, Inc.</u>, 10 Mass. App. Ct. 121, 123 (1980)).  To calculate the attorneys' fees under Chapter 93A, the Court must consider:

> [T]he nature of the case and issues presented, the difficulty of the legal and factual issues involved, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation, ability and competence of the attorney, the usual price charged for similar services by other attorneys in the same area and the amount of awards in similar cases.

<u>Pizzo</u> v. <u>Gambee</u>, 796 F. Supp. 2d 270, 271-72 (D. Mass. 2011) (Gorton, J.) (citing <u>Linthicum</u>, 379 Mass. at 388); <u>Heller</u>, 376 Mass. at 629); <u>see</u> <u>Twin Fires Inv., LLC</u> v. <u>Morgan Stanley Dean Witter & Co.</u>, 445 Mass. 411, 429-30 (2005) (reaffirming the <u>Linthicum</u> factor approach).

### 2.  Attorneys' Fees for the Hermidas' Individual Chapter 93A Claim

The Hermidas are entitled to "reasonable attorney[s'] fees and costs incurred in connection with" their Chapter 93A claim prior to October 28, 2010, when the Hermidas implicitly rejected Archstone's settlement offer by filing a class action complaint. Mass. Gen. Laws ch. 93A, § 9(4); Compl. ¶¶ 1, 51; Stipulated Facts ¶¶ 3-4.  Although the Hermidas' attorneys briefed the Court regarding their entitlement to attorneys' fees, they have not

submitted a sworn statement detailing the time spent working on
the case.  Nevertheless, the Court, reviewing the record as a
whole, may award reasonable attorneys' fees based on its
"firsthand knowledge" acquired from presiding over the case.
Heller, 376 Mass. at 629-30; see Limina, 1992 WL 64769, at *3.

Several invoices prepared by the Hermidas' counsel document
the time they spent and costs they incurred working on the case.
See Aff. Rebecca J. Schwartz, Ex. K, Invoice ("Fogelman &
Fogelman's Invoice") 2-9, ECF No. 187-11; Aff. Rebecca J.
Schwartz, Ex. K, Prof'l Servs. Rendered Through 02/29/2012 ("Todd
& Weld LLP's Invoice") 10-17, ECF No. 187-11; Aff. Rebecca J.
Schwartz, Ex. K, Prof'l Servs. ("Arrowood Peters's Invoice")
18-22, ECF No. 187-11.

These records show that counsel for the Hermidas spent a
total of 35.5 hours on the case during the period in question:
lead counsel from Fogelman & Fogelman spent 23.9 hours; lead
counsel from Todd & Weld LLP spent 5.3 hours; and an associate
from Todd & Weld LLP spent 6.3 hours.  Fogelman & Fogelman's
Invoice 2-3; Todd & Weld LLP's Invoice 10.  Counsel from Fogelman
& Fogelman incurred $51.51 in costs in preparing the case.
Fogelman & Fogelman's Invoice 3.  Counsel from Fogelman &
Fogelman charged $350 per hour spent working on the case.
Fogelman & Fogelman's Invoice 2-3.  Lead counsel from Todd & Weld

LLP charged $450 per hour, while the associate from Todd & Weld
LLP charged $180 per hour.  See Todd & Weld LLP's Invoice 15.

"It is well settled in the First Circuit that clerical or
secretarial tasks ought not to be billed at lawyers' rates, even
if a lawyer performs them."  Equal Emp't Opportunity Comm'n v.
AutoZone, Inc., No. 10-11648-WGY, 2013 WL 1277873, at *7 (D.
Mass. Mar. 29, 2013) (quoting Lipsett v. Blanco, 975 F.2d 934,
940 (1st Cir. 1992)) (internal quotation marks omitted).  Tasks
considered to be of an administrative or clerical nature include:
"document preparation, organization, distribution, and copying;
drafting emails and other correspondence; data collection; legal
cite-checking; scheduling and logistical planning; filing court
documents; factual research; and docket review and management."
Id. (collecting cases); Resnick v. Jeffrey S. Baker, P.C.,
No. 06-2711, 2012 WL 1417619, at *3 (Mass. Super. Ct. Mar. 28,
2012) (Kaplan, J.) (listing as administrative tasks "organizing
files, organizing exhibits and taking notes").  After reviewing
the Hermidas' attorneys' records, the Court concludes that 8.9 of
the 23.9 hours spent by counsel from Fogelman & Fogelman
constituted administrative work, as did 1.3 of the 5.3 hours
spent by the lead counsel from Todd & Weld LLP.

For the purposes of calculating attorneys' fees, courts in
this circuit typically reduce by half any billed hours an
attorney spent traveling instead of working on the case.  See

<u>Maceira</u> v. <u>Pagan</u>, 698 F.2d 38, 40 (1st Cir. 1983); <u>Chestnut</u> v.
<u>Coyle</u>, No. 99-10236-RWZ, 2004 WL 438788, at *3 (D. Mass. Mar. 9,
2004) (Zobel, J.); <u>Horney</u> v. <u>Westfield Gage Co.</u>, 227 F. Supp. 2d
209, 216 (D. Mass. 2002) (Neiman, M.J.).  Here, an attorney for
Fogelman & Fogelman reported having spent at least some portion
of a 3.7-hour block of time traveling to Boston to interview the
Hermidas.  Fogelman & Fogelman's Invoice 2.  Accordingly, the
Court reduces that period to 1.85 hours.

A reduction in attorneys' fees is also appropriate when the
records on which the award is based employ "block billing," that
is, when the records "describe[e] the type of work performed in a
day and the total time spent on that work without assigning
separate time values to each separate task."  <u>Resnick</u>, 2012 WL
1417619, at *2; <u>accord</u> <u>Equal Emp't Opportunity Comm'n</u>, 2013 WL
1277873, at *8.  Courts disfavor the use of block billing
"because it requires decipher[ing] on the judges' part."  <u>Equal</u>
<u>Emp't Opportunity Comm'n</u>, 2013 WL 1277873, at *8 (alterations in
original) (quoting <u>Conservation Law Found., Inc.</u> v. <u>Patrick</u>, 767
F. Supp. 2d 244, 253 (D. Mass. 2011)) (internal quotation marks
omitted).  Where the use of block-billing is prevalent, courts
have imposed global fee reductions of ten to twenty percent.
<u>See, e.g.</u>, <u>Torres-Rivera</u> v. <u>O'Neill-Cancel</u>, 524 F.3d 331, 340
(1st Cir. 2008) (upholding fifteen percent global fee reduction
penalty for block billing); <u>Equal Emp't Opportunity Comm'n</u>, 2013

WL 1277873, at *8 (reducing attorneys' reported hours by twenty percent "[g]iven the imprecise construction of many of the time entries and their frequent lack of task differentiation"); Resnick, 2012 WL 1417619, at *3 (reducing attorneys' fees awarded under Chapter 93A by ten percent due, in part, to counsels' use of block billing); cf. Specialty Retailers, Inc. v. Main St. NA Parkade, LLC, 804 F. Supp. 2d 68, 75-76 (D. Mass. 2011) (Neiman, M.J.) (reducing fees by nearly half for specific hours attributed in block billing).

Here, counsel from Fogelman & Fogelman employed block billing almost exclusively in documenting hours billed. Fogelman & Fogelman's Invoice 2-3. Counsel from Todd & Weld also used block billing, albeit to a far lesser degree. Todd & Weld LLP's Invoice 10. Accordingly, the Court deems a fifteen percent reduction reasonable, to be imposed after making the specific reductions and adjustments noted above.

The Court deems as reasonable a $350 hourly rate for the work performed by the lead attorneys, $275 per hour for an associate, and $125 per hour for administrative work, in light of: the complex nature of this class action, which presented many issues of first impression; the successful result obtained; the experience, reputation, ability, and competence of the attorneys; the usual price charged for similar services by other attorneys in the same area; and the amount of attorneys' fees awarded in

similar cases.  See, e.g., Nelson v. Hecker, No. 09–10513–JLT, 2010 WL 1741072, at *1-2 (D. Mass. Apr. 28, 2010) (Tauro, J.) (holding that a $350 per-hour-rate for lead attorney, $275 per hour for an associate, and $125 per hour for administrative work is reasonable in consumer protection matters); Eldridge v. Provident Companies, Inc., No. 971294, 2004 WL 1690382, at *8 (Mass. Super. Ct. July 6, 2004) (Sanders, J.) (limiting hourly rate to $350 in a Chapter 93A matter brought on behalf of several thousand class members).

In sum, the Hermidas are entitled to recover attorneys' fees for the relevant period as detailed below:

Fogelman & Fogelman

| Work | Rate | Hours | Deduction | Total |
|------|------|-------|-----------|-------|
| Lead Counsel | $350 | 15 | 1.85 | $4,602.50 |
| Administrative | $125 | 8.9 | N/A | $1,112.50 |
| 15% Fee Reduction | | | | −$857.25 |
| Costs | N/A | $51.51 | N/A | $51.51 |
| **Subtotal** (Fees Plus Costs) | | | | $4,909.26 |

Todd & Weld LLP

| Work | Rate | Hours | Deduction | Total |
|------|------|-------|-----------|-------|
| Lead Counsel | $350 | 4 | N/A | $1400 |
| Associate | $275 | 6.3 | N/A | $1,732.50 |
| Administrative | $125 | 1.3 | N/A | $162.50 |
| 15% Fee Reduction | | | | -$494.25 |
| Costs | N/A | N/A | N/A | N/A |
| **Subtotal** (Fees Plus Costs) | | | | $2,800.75 |

Therefore, the Hermidas are entitled to $7,710.01 in attorneys' fees and costs for the relevant period.

### 3.  Attorneys' Fees for the Chapter 93 Class Action Incurred After the Hermidas' Rejection

After rejecting Archstone's offer to refund their amenity-use fee, the Hermidas were arguably no longer advancing their own interests in the action, except perhaps the chance to recover multiple damages.  Rather, the Hermidas were acting as the class representative, and they reasonably incurred costs and legal fees to advance the interests of the class.  See Hermidas' Br. 1-2.  Given that the Hermidas' rejection of Archstone's limited offer did not affect the class's right to recover attorneys' fees, as explained above, the class members are entitled to recover reasonable attorneys' fees incurred between October 28, 2010, the day the Hermidas filed a class action

28

complaint on their behalf, and February 13, 2012, when they
rejected Archstone's settlement offer.  See Mass. Gen. Laws ch.
93A, § 9(4); Stipulated Facts ¶¶ 17-19.

Records indicate that class counsel worked a total of 338.7
hours on this matter between October 28, 2010, and February 13,
2012.  See Fogelman & Fogelman's Invoice 3-8 (reporting 126.6
hours of lead counsel work and 19.1 hours of associate or
"blended rate" work); Todd & Weld LLP's Invoice 10-15 (reporting
113.2 hours of lead counsel work and 30.6 hours of associate
work); Arrowood Peters's Invoice 18-21 (reporting 49.2 hours of
lead counsel work).  The total costs incurred during this period
by class counsel were $1,906.16.  See Fogelman & Fogelman's
Invoice 3-8 (reporting $1,297.76); Todd & Weld LLP's Invoice
15-16 (reporting $600); Arrowood Peters's Invoice 21-22
(reporting $8.40).

As with the Hermidas' award of attorneys' fees, the class's
attorneys' fees must be adjusted to account for work that was
administrative or clerical in nature and for hours spent
traveling.  Counsel from Fogelman & Fogelman reported spending at
least some portion of two blocks, totaling eleven hours,
traveling for which the court will deduct five and one half
hours.  Fogelman & Fogelman's Invoice 5.  After reviewing the
record, the court concludes that 18.4 of the 148.8 hours spent by
counsel from Fogelman & Fogelman constituted administrative work,

29

as was 13.4 of the 143.8 hours spent by counsel from Todd & Weld
LLP and 8.4 of the 49.2 hours spent by counsel from Arrowood
Peters.  See Fogelman & Fogelman's Invoice 3-8; Todd & Weld LLP's
Invoice 10-15; Arrowood Peters's Invoice 18-21.  Additionally,
the Court will make a fifteen percent reduction in attorneys'
fees due to the attorneys' use of block billing in the same
manner as with the Hermidas' attorneys' fees.

The Hermidas argue that during this period they conferred a
benefit on the entire class, a benefit that extends not only to
the certified class but also to those defendants that were
dismissed.  Hermidas' Br. 4.  The Court notes that the decision
to add fourteen other defendants added complexity and expense to
this action, including time researching Archstone affiliates'
corporate structure, discovery, motions to dismiss, and class
certification.[4]  Class counsel also stated that his law firm has
commenced a similar action against the other defendants, which is
currently pending.  Id.  The Court is mindful that most of the
research done for this litigation is directly transferrable to
the other pending matters and, if class counsel succeeds in those
other actions, those class members will be entitled to recover

---

[4] On May 9, 2011, after hearing the defendants' arguments on
their motions for summary judgement, the Court ordered counsel
to suspend any discovery related to the Archstone's affiliated
entities.  By then, however, some discovery expenses had already
been incurred.  See Fogelman & Fogelman's Invoice 3-5; Todd &
Weld LLP's Invoice 11-12.

attorneys' fees.  This circumstance alone is not sufficient to
reduce the fees.  <u>Eldridge</u>, 2004 WL 1690382, at *4 (declining to
reduce attorneys' fees simply because the majority of attorneys'
work was relevant to other pending cases).  As the Superior Court
sitting in and for the County of Suffolk stated, "it is difficult
to see the basis for any particular percentage reduction simply
because the work was not exclusive to the [leading] matter.  That
documents collected for the [leading] case could also prove
useful in other litigation does not mean that plaintiffs'
attorneys (and their paralegals) are not entitled to be
compensated for their time."  <u>Id.</u>

It would be unfair, however, for Archstone to bear all the
burden, especially considering Archstone was not served with the
class action until April 22, 2011.  <u>See</u> Defs.' Unopposed Mot.
Amend Class Certification Briefing & Hr'g Dates Set Ct.'s Elec.
Notice Dated May 10, 2011, at 4, ECF No. 137.  The majority of
the class counsels' work from when the suit was removed until
Archstone's appearance before this Court on May 13, 2011, Def.
ASN Reading LLC's Mot. Dismiss 1-2, ECF No. 139, was related to
the other fourteen defendants.  Although some of the work was
useful for advancing the class's interests, it is not reasonable
for Archstone to bear the associated costs given that it did not
have the chance to defend itself and the cases against all
fourteen other defendants were ultimately dismissed.  <u>See</u>

Linthicum, 379 Mass. at 398 (holding that attorneys' fees should be based, in part, on the issues presented and the result obtained).  Therefore, the Court will deduct all of the attorneys' fees and costs incurred between October 28, 2010, and May 13, 2011, and award the class attorneys' fees incurred between May 14, 2011, and February 13, 2012.

The Court will also deduct ten percent of the total attorneys' fees and costs incurred during the relevant period to account for the effort of counsel to advance the Hermidas' individual case,[5] as distinct from the interests of the class.[6] Cf. Denny v. Westfield State Coll., Nos. 78-2235-F, 78-3068-F, 1989 WL 112823, at *4 (D. Mass. May 12, 1989) (Freedman, J.) (reducing counsels' hours by ten percent because the court could not determine "whether the amount deducted properly represents the time expended on the matter of class certification").

---

[5] As noted, even after their rejection of Archstone's limited settlement offer, the Hermidas still had an interest in seeking multiple damages in addition to the full amount of their amenity-use fees.

[6] This result is a consequence of the peculiar circumstances of this case and would not be warranted if the Hermidas' individual attorneys' fees were included in the class attorneys' fees.  See Eldridge, 2004 WL 1690382, at *5 ("Where . . . claims arise from a single chain of events or where there is a core theory which governs all of the claims, apportionment of the legal effort among the different claims is neither necessary nor appropriate." (citing Office One, Inc. v. Lopez, 437 Mass. 113, 126 n.17 (2002))); see also System Mgmt., Inc. v. Loiselle, 154 F. Supp. 2d 195, 209-10 (D. Mass. 2001).

The Court applies the same hourly rates to calculate the class's attorneys' fees as applied to the Hermidas' award.  The calculation of the class attorneys' fees and costs is as follows:

Fogelman & Fogelman

| Work | Rate | Hours | Deduction | Total |
| --- | --- | --- | --- | --- |
| Lead Counsel | $350 | 98.6 | 51.5 | $20,510 |
| Associate | $275 | 18.4 | 2.7 | $4,317.50 |
| Administrative | $125 | 25.8 | 11.5 | $1,787.50 |
| **Fees Subtotal** | | | | **$26,615** |
| Costs | N/A | $1,297.76 | $32.44 | $1,265.32 |

Todd & Weld LLP

| Work | Rate | Hours | Deduction | Total |
| --- | --- | --- | --- | --- |
| Lead Counsel | $350 | 100.1 | 39.7 | $21,140 |
| Associate | $275 | 30.6 | 6.2 | $6710 |
| Administrative | $125 | 13.1 | 8.7 | $550 |
| **Fees Subtotal** | | | | **$28,400** |
| Costs | N/A | $600 | $551 | $49 |

<u>Arrowood Peters</u>

| <u>Work</u> | <u>Rate</u> | <u>Hours</u> | <u>Deduction</u> | <u>Total</u> |
|---|---|---|---|---|
| Lead Counsel | $350 | 40.8 | N/A | $14,280 |
| Administrative | $125 | 8.4 | N/A | $1050 |
| **Fees Subtotal** | | | | **$15,330** |
| Costs | N/A | $8.40 | N/A | $8.40 |

<u>TOTAL</u>

| | |
|---|---|
| Total Fees | $70,345 |
| 15% Fee Reduction (Block Billing) | −$10,551.75 |
| Total Fees and Costs | $61,115.97 |
| 10% Total Reduction for Hermidas' Interests | −$6,111.60 |
| **TOTAL(Fees and Costs)** | **$55,004.37** |

Therefore, this Court awards the class members $55,004.37 in attorneys' fees and costs.

## III. CONCLUSION

For the reasons set forth herein, the Court awards the Hermidas $7,710.01 in attorneys' fees and costs and awards the class members $55,004.37 in attorneys' fees and costs.[7]

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

---

[7] A federal district court may certify a question for decision by the Supreme Judicial Court "if there are involved in any proceeding before it questions of law of [the Commonwealth of Massachusetts] which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of [the Supreme Judicial Court]." Mass. S.J.C. Rule 1:03, § 1 (2010). This Court is aware that there is no controlling precedent guiding resolution of the underlying case; that the interpretation of the Massachusetts Security Deposit Law, Mass. Gen. Laws ch. 186, § 15B(1)(b), is purely a question of Massachusetts state law; and that the cases relied on therein are primarily those of the lower courts of the Commonwealth. Should either the Hermidas or Archstone wish to bring a motion for certification, this Court will entertain it. Mass. S.J.C. Rule 1:03, § 2 (allowing a question to be certified "upon the motion of any party to the cause").